The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; or rehear the parties or their representatives. However, there are good grounds to amend the Opinion and Award with regard to plaintiffs medical treatment.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in a Pre-Trial Order dated June 16, 1999 as
 STIPULATIONS
1. All parties are properly before the Industrial Commission, are subject to the terms of the Workers Compensation Act, and the Commission has jurisdiction over the parties and the subject matter.
2. Plaintiff was an employee of defendant-employer, Abbott Laboratories, and Kemper Risk Management Services was the workers compensation carrier on the risk.
3. Plaintiff sustained a compensable injury by accident on June 11, 1992.
4. Plaintiff has not returned to work at Abbott Laboratories or any other employer since June 11, 1992.
5. The depositions of Dr. Jessie Leak, Dr. David Tomaszek, and Ms. Susan Ziebell are a part of the evidentiary record in this matter.
 ***********
The Full Commission adopts, with modification, the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer as a production manager. On June 11, 1992, plaintiff sustained an admittedly compensable injury to her back, head and left leg and left arm when tripping over a tripod and falling onto her buttocks.
2. Plaintiff has received various forms of medical treatment for her injuries. Dr. David Tomaszek has served as plaintiffs primary treating physician for her neck and back since 1993.
3. On December 31, 1997, defendants filed a Motion to Compel Cooperation with Medical Treatment in order to persuade plaintiff to present herself at the Rehab Center in Charlotte, North Carolina. Plaintiff responded to said motion stating that the pain clinic in Charlotte was far from her home, six hours round-trip driving time, but that she would be willing to attend one that was closer.
4. On June 10, 1998, Executive Secretary Tracey Weaver issued an Order compelling plaintiff to comply with all "reasonable and prescribed medical and rehabilitative treatment. The Order also directed defendants to diligently pursue location of a pain clinic closer to plaintiffs home; however, if one could not be located, then plaintiff should present herself to the Charlotte clinic.
5. Defendants provided plaintiff with a list of other pain clinics, some of which were further away from plaintiffs home than the Charlotte clinic. One pain clinic included on the list is located in Fayetteville, North Carolina, which is 75 miles from plaintiffs home. Plaintiff did not comply with the June 10, 1998 Order and did not attend either the pain clinic in Charlotte or any of the others suggested by defendants, primarily because of the distance from her home.
6. Defendants then sought to compel plaintiff to attend the pain clinic in Charlotte by filing a Form 24 Application to Terminate or Suspend Payment of Compensation on August 26, 1998. In an Order dated October 19, 1998, Special Deputy Commissioner Jim Gillen approved the Form 24 Application in so far as allowing defendants to suspend payment of compensation from August 4, 1998 until August 27, 1998. Special Deputy Commissioner Gillens October 19, 1998 Order also required plaintiff to attend the pain clinic in Fayetteville at the Cape Fear Valley Medical Center, as plaintiff indicated she was willing to do.
7. Susan Ziebell, medical case manager with Southern Rehabilitation Network, was directed by defendants to set up the appointment for plaintiff at the pain clinic at Cape Fear Valley Medical Center. Plaintiff was scheduled to be seen by an anesthesiologist, a physical therapist, and a psychologist.
8. On November 18, 1998 plaintiff traveled to the pain clinic in Fayetteville and was seen by Dr. Jessie Leak, board certified anesthesiologist. After an evaluation and review of plaintiffs medical records, Dr. Leak found that plaintiff had previously done all of the available modalities that their pain clinic could offer, and therefore could not justify plaintiff traveling 75 miles to Fayetteville to receive the same treatment she could receive at home. Plaintiff was previously treated by the Rex Pain Clinic in 1994 and 1995, with no further options offered to her. Plaintiff had received eighteen months of mind control, biofeedback and extensive physical therapy and was currently using a spinal cord stimulator. Dr. Leak finally concluded that the Cape Fear Valley pain clinic had nothing more to offer the plaintiff and any further work-up of plaintiff would be duplicative. However, Dr. Leaks opinion and his decision were based on misinformation provided by plaintiff. Plaintiff did not attend the other appointments as scheduled at Cape Fear Valley.
9. Although Dr. Leak is highly qualified and Cape Fear Valley pain clinic is one of the best multi-disciplinary pain clinics in the State of North Carolina, Dr. Leaks conclusion that the pain clinic had nothing beneficial to offer plaintiff was negatively influenced by the history given by plaintiff. Therefore Dr. Leaks findings and opinions are inaccurate. Plaintiff may still benefit from a pain program.
10. On January 2, 1999 defendants filed a Motion to Compel Compliance with Medical Treatment seeking to compel plaintiff to attend the pain clinic in Charlotte. In a February 3, 1999 Order, Special Deputy Commissioner Gillen ordered the plaintiff to comply with medical or rehabilitative procedures as required under N.C.G.S. 97-25.
11. Defendants then directed Susan Ziebell to schedule plaintiff for an appointment at the Charlotte pain clinic. No attempts were made hereafter to locate another clinic closer to plaintiffs home. Plaintiff was scheduled for an initial one-day evaluation on March 26, 1999 and then to be admitted to a four week, five-day per week in-patient pain management program.
12. In response, plaintiff filed a motion for clarification of the Order filed February 3, 1999 by Special Deputy Commissioner Gillen. Another Order was then filed on March 25, 1999 in which Special Deputy Commissioner Gillen ordered the plaintiff to attend the appointment as scheduled. Plaintiff appealed Special Deputy Commissioner Gillens Order compelling plaintiff to appear at the Charlotte clinic by filing a Form 33 Request for Hearing dated March 26, 1999. Plaintiff did not attend her appointment at the Charlotte clinic. Subsequent to the filing of the Form 33, defendants filed another Form 24 Application based on plaintiffs non-compliance with the March 25, 1999 Order.
13. Dr. Tomaszek, plaintiffs treating physician since 1993 basically summarized plaintiffs condition as back and leg pain. Over the years, plaintiff has undergone a course of treatment including pain clinics, treatment for depression, insomnia, muscle spasms and inflammation and various pain medications. Plaintiff has had a spine stimulator implanted for years, which has been beneficial in managing her condition. In Dr. Tomaszeks opinion, plaintiff has been on a stable pain regimen since sometime in 1997, and he does not consider any type of surgical intervention to be a viable option.
14. Although Dr. Tomaszek was not initially consulted for a referral of plaintiff to a pain clinic, he believes there is a need to treat plaintiffs pain and recognizing many ways to do so, he would have recommended a pain clinic if requested. Therefore, as recognized by Dr. Tomaszek, a pain program might be beneficial in treating plaintiff.
15. As of December 2, 1997, plaintiff was being treated for pain with a spinal cord stimulator, various medications and whirlpool therapy at home, which Dr. Tomaszek considered to be appropriate and reasonable for plaintiff to continue. Dr. Tomaszek was familiar with the pain clinic in Charlotte, but he testified that the same pain modalities offered at the Charlotte clinic were available at pain clinics closer to plaintiffs home, including several in the Raleigh area, and Chapel Hill, New Bern, Jacksonville, and Greenville. He also noted that traveling long distances was painful for plaintiff.
16. Dr. Tomaszek further indicated that plaintiff was physically capable of performing certain kinds of work but an attempt to do so at that time would have exacerbated plaintiffs pain unless she could get the pain under control and then be conditioned for sedentary work. In Dr. Tomaszeks opinion, plaintiffs pain condition is chronic and will remain so. In so far as Dr. Tomaszek is relocating to another area, he recommended that plaintiff follow up for medical treatment with Dr. Scott Johnston and Dr. Dresbech of the Johnston Pain Clinic.
17. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff had available for her use at home, a jacuzzi for whirlpool baths, an air glider, a vibrating heated backrest recliner; she independently performed arm and leg stretches and used daily relaxation techniques. At the time of the initial appointment scheduled at the Charlotte pain clinic plaintiffs husband had undergone a leg amputation, suffered from irritable bowel syndrome, had two stints placed in his heart, required a special diet and assistance in administering his medications. During the same period of time, plaintiffs sister had back surgery and needed plaintiff to assist her with meals and medications. Plaintiffs husband subsequently underwent a second amputation for which he also needed special care and continues to need care and supervision that the plaintiff provides for him.
18. Requiring plaintiff to attend the pain clinic in Charlotte is not reasonable under the circumstances. Based on factors associated with plaintiffs medical condition, the distance of the Charlotte pain clinic from plaintiffs residence, coupled with her responsibilities at home at the time, plaintiff was justified in not complying with the Commissions March 25, 1999 Order requiring her to attend the Charlotte pain clinic. Nevertheless, plaintiff did not put forth full effort or take advantage of the potential benefits at the pain clinic in Fayetteville and she presented inaccurate information during her visit, which prevented a full evaluation.
19. However, plaintiff may still benefit from a comprehensive pain program, which is located closer to her home than Charlotte. Dr. Scott Sanitate in conjunction with Carolina Back Institute, located in Cary, North Carolina, can provide a comprehensive pain management program from which plaintiff may benefit without traveling an unreasonable distance from plaintiffs home.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Defendants have not shown good grounds to hold plaintiff in contempt for her non-compliance with the Industrial Commissions Order of March 25, 1999 requiring her to attend a pain clinic in Charlotte. N.C.G.S.97-25.
2. Furthermore, defendants are not entitled to suspend plaintiffs benefits pursuant to their Form 24 Application to Terminate or Suspend Compensation filed April 19, 1999. N.C.G.S. 97-25.
3. Defendants are not entitled to costs, sanctions or attorney fees in this matter. N.C.G.S. 97-88.1.
4. However, as plaintiff did not fully participate in the pain program in Fayetteville, plaintiff may benefit from the pain program in Cary with Dr. Scott Sanitate of Carolina Back Institute. N.C.G.S. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Defendants Form 24 Application filed April 19, 1999 should be, and the same is hereby Denied.
2. Defendants request that plaintiff be required to attend the pain clinic in Charlotte is hereby and the same shall be Denied. However, defendants shall set up and plaintiff shall attend an evaluation at Carolina Back Institute with Dr. Scott Sanitate as soon as is reasonably possible. Furthermore, plaintiff is directed to provide accurate information on past medical treatment to Dr. Sanitate. Defendants are to confirm this information so the problems, which developed in Fayetteville does not occur again.
3. Although Dr. Tomaszek has recommended Dr. Scott Johnston as a physician with whom plaintiff can follow-up, the decision regarding plaintiffs new treating physician will be made by designation of Dr. Sanitate after his evaluation at which time defendants shall provide for all reasonably necessary medical treatment in accordance therewith.
4. Defendants shall continue to pay to plaintiff temporary total disability compensation and all reasonably necessary medical expenses incurred by plaintiff as a result of her compensable injury until further Order of the Industrial Commission.
5. Defendants shall bear the costs of this action, including the deposition fees of Drs. Leak and Tomaszek, in the amounts of $125.00 and $292.50 respectively.
This the ___ day of December 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER